UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JERRY DOWELL BAILEY, JR.,

        Petitioner,

                                      CASE NO. 2:06-CV-14099
    v.                               JUDGE DENISE PAGE HOOD
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

WILLIE SMITH,

        Respondent.[1]

_____/


# REPORT AND RECOMMENDATION


*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    E.    *Destruction/Suppression of Evidence (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.    *Destruction of the Wallet* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        3.    *Suppression of Fingerprint Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        4.    *Failure to Give Adverse Inference Instruction* . . . . . . . . . . . . . . . . . . . . . . . . . 19
    F.    *Prosecutorial Misconduct (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.    *Failure to Locate Res Gestae Witness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        3.    *Comments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    G.    *Judicial Partiality (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    H.    *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
            a.  Failure to Request Instructions and to Object . . . . . . . . . . . . . . . . . . . . . . . . . . 31
            b.  Failure to Subpoena Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            c.  Failure to Provide Clothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    I.    *Sentencing (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    J.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

_____

    [1]By Order entered this date, Willie Smith has been substituted for Kenneth McKee as the proper respondent in this action.

      2.     *Analysis* ............................................................ 40

K.     *Conclusion* ............................................................ 41

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ....................................... 41

\*      \*      \*      \*      \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

     1.     Petitioner Jerry Dowell Bailey, Jr., is a state prisoner, currently confined at the Ionia Maximum Correctional Facility in Ionia, Michigan.

     2.     On September 14, 2004, petitioner was convicted of three counts of armed robbery, MICH. COMP. LAWS § 750.529; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On September 29, 2004, he was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 35 years, 7 months' to 60 years' imprisonment on each of the armed robbery convictions, a concurrent term of 40-60 months' imprisonment on the felon-in-possession conviction, a consecutive term of 13-20 years' imprisonment on the home invasion conviction, and a consecutive term of two years' imprisonment on the felony firearm conviction.

     3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.     APPELLANT WAS DENIED A FAIR TRIAL AND HIS RIGHT TO PRESENT A DEFENSE BY THE LOSS OF POTENTIALLY EXCULPATORY PHYSICAL EVIDENCE PRIOR TO TRIAL; APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL ATTORNEY'S FAILURE TO REQUEST AN ADVERSE

INFERENCE INSTRUCTION.

II.  APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL WHERE THE TRIAL JUDGE FAILED TO DELIVER THE ADVERSE WITNESS INSTRUCTION CONCERNING A MISSING COMPLAINING WITNESS AND APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE OMISSION OF THAT JURY INSTRUCTION.

III.  THERE WAS INSUFFICIENT EVIDENCE OF ARMED ROBBERY AS TO COUNT THREE TO SATISFY DUE PROCESS WHERE THE PERPETRATOR DID NOT TAKE ANY PROPERTY FROM THE CUSTODY OR CONTROL OF COMPLAINANT PATRICIA MCGHEE.

Petitioner filed a *pro se* supplemental brief raising two additional claims:

IV.  APPELLANT WAS DENIED A FAIR TR[IA]L AND RIGHT TO PRESENT A DEFENSE BY PROSECUTION MISCONDUCT AND FAILURE TO DISCLOSE EVIDENCE FAVORABLE TO THE ACCUSE[D] AND WAS DENIED EFFECTIV[E] ASSISTANCE OF COUNSEL BY HIS TR[IA]L ATTORN[E]Y, FAILURE TO DEMAND THE PROSECUTION DISCLOSE OF EXCULPATORY EVIDENCE.

V.  APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO SUBPOENA THE APPELLANT WITNESSES, FILE PROPER MOTIONS AND FAILING TO OBJECT TO PROSECUTIONS PREJUDICIAL MISCONDUCT.

VI.  APPELLANT WAS DENIED HIS RIGHT TO A FAIR AND UNPREJUDICIAL VERDICT DUE TO TRIAL JUDGE COMMENTS AND HIS FAILURE TO PROPERLY ADDRESS JURY QUESTIONS.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Bailey*, No. 258705, 2006 WL 954189 (Mich. Ct. App. Apr. 13, 2006) (per curiam).

4.  Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court, as well as a new claim relating to his sentencing. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Bailey*, 476 Mich. 866,

720 N.W.2d 308 (2006).

     5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 19, 2006. Petitioner filed an amended petition on December 20, 2006, and a brief in support of the petition on February 1, 2007. As set forth in his brief, petitioner raises six claims as grounds for the writ of habeas corpus:

I.      WHETHER THE TRIAL COURT VIOLATED THE PETITIONER DUE PROCESS [sic] BY ALLOWING DESTROYED EVIDENCE INTO EVIDENCE.

     A.     DID THE TRIAL COURT ERROR [sic] WHEN [IT] FAILED TO GIVE THE JURY [AN] ADVERSE INSTRUCTION CONCERNING THE DESTROYED EVIDENCE.

II.     WHETHER THE PROSECUTION VIOLATED THE PETITIONER DUE PROCESS [sic] WHEN THEY FAILED TO DISCLOSE EXCULPATORY EVIDENCE FAVORABLE TO THE ACCUSE[D].

     A.     DID THE JURY ALSO HAVE A RIGHT TO VIEW THIS EVIDENCE WHEN THE PROSECUTION THROUGH HIS PRESENTATION MADE THEM AWARE OF ITS EXISTENCE.

III.     WHETHER THE PETITIONER'S ATTORNEY VIOLATED HIS SIXTH AMENDMENT RIGHT TO EFFECTUAL ASSISTANCE OF COUNSEL.

IV.     WHETHER THE PROSECUTION VIOLATED THE PETITIONER'S SIXTH AMENDMENT RIGHT WHEN THEY FAILED TO SHOW DUE DILIGENCE TO GET ENDORSED WITNESS KATHLEEN HORTON TO TRIAL.

     A.     DID TRIAL [COUNSEL] ERR[] IN NOT REQUEST[ING] [AN] ADVERSE INSTRUCTION CONCERNING MISSING WITNESSES.

V.     WHETHER [THE] TRIAL JUDGE VIOLATED THE PETITIONER'S CONSTITUTIONAL RIGHTS TO A JURY TRIAL WHEN HE ABONISH [sic] THE JURY FOR ATTEMPTING TO REACH A VERDICT HE DIDN'T FAVOR.

VI.     WHETHER THE TRIAL JUDGE ERR[ED] IN SENTENCING THE

PETITIONER UNDER THE THIRD HABITUAL WHEN HE WAS NEVER CHARGED OR TRIED.

6.     Respondent filed his answer on March 30, 2007.  He contends that petitioner's sixth claim is unexhausted, and that the petition should be dismissed on that basis.  Alternatively, he argues that petitioner's claims are without merit.

7.     Petitioner filed a reply to respondent's answer on May 3, 2007.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged with four counts of armed robbery stemming from the February 26, 2004, robbery of Robert McGhee, Patricia McGhee, Marcus Nixon, and Kathleen Horton.  Petitioner was also charged with first degree home invasion, possession of a firearm by a felon, and use of a firearm during the commission of a felony.   The evidence adduced at trial was accurately summarized in the brief filed by petitioner's counsel in the Michigan Court of Appeals:

> Robert McGhee stated that in February, 2004, he resided at 11635 Archdale in the City of Detroit.  At about 1:00 p.m., he was in front of his garage, where he works on cars.  With him were Marcus Nixon and a woman he knew as Neicy.  three armed men came around the corner.  One placed a gun to Nixon's head.  The others took McGhee into the garage and made him lay on the floor while they rifled his pockets and removed cash from his wallet.  Nixon and McGhee had their hands tied with belts.  Nixon was blindfolded.  Both were placed in a car in the garage.  A man he identified as Appellant placed a gun to his head and demanded his house keys. The man went to the house after instructing the others to kill McGhee and Nixon if he was unable to enter the house.  Just then, McGhee's wife then came out to feed the dog.  All three men rushed her.  McGhee untied himself and ran from the car to an oil change shop down the street.  He hid there while shop employees summoned the police.  When the police arrived he was reunited with his wife and Nixon, who was locked in the garage.  Two weeks prior to trial, McGhee identified Appellant at a police lineup.  He was unable to describe the pistol or the other two weapons. (T1 73-100).
> Marcus Nixon stated that on February 26, 2004, he was at the McGhee house. A young woman arrived.  Minutes later, a man with a black gun hit him on the head and ordered him onto the floor of the garage.  His hands were tied behind his back and he was blindfolded with a rag. $50.00 cash and his wallet, which contained another $200.00, were taken from him.  Two persons helped him into a car.  He then

heard someone demand house keys from McGhee. That person threatened to kill McGhee if McGhee gave him the wrong key. Nixon later escaped the car and called 911 from a telephone in the garage. He tried to leave, but a man exited the house with a gun and locked him in the garage. Minutes later, McGhee and the police arrived and he was released from the garage. He later attended a lineup which included Appellant. Nixon selected another person. (T1 101-114).

Patricia McGhee stated that at 12:35 p.m. February 26, 2004, she exited the rear door of her 11635 Archdale home to feed the dog. She saw a man in her yard and turned to reenter the home. Another man, identified as Appellant, ran up to her holding a black gun. He ordered her back into the house and followed her inside. He asked her where her money and safe were located and threatened to kill her if she did not tell him. She replied that she had neither. He and another man walked through the house to a bedroom. The other man looked under the mattress and in the jewelry box before leaving. The man she identified as Appellant tied her hands behind her and told her to lay on the floor. The first man returned and said they had to go. Both men left, taking with them her husband's watch and two pistols. She locked the door and called 911. The operator informed her that the incident had already been reported and the police were on their way. On August 31, 2004, she attended a lineup, where she identified Appellant. (T1 116-130).

Detroit Police Officer Richard Waligura testified that he and his partner, Kevin Bennett, were working in plain clothes in an unmarked vehicle. They received a radio run to the Oil Dispatch at Plymouth Road and the Southfield Expressway on a report of a possible abduction. Waligura observed a Ford pick-up truck facing east blocking a lane of traffic on the northbound Southfield service drive. A man he identified as Appellant was running north on the service drive holding his hand [in] his left pocket. The man removed a blue steel revolver from his left pocket and began to waive [sic] it around. They identified themselves as police officers. The man ran across the expressway. Waligura notified the dispatcher and observed other responding officers apprehend the man and recover the weapon. Waligura crossed a freeway overpass on foot and identified Appellant to the arresting officers, then proceeded to the Archdale address to inform the complainants. (T1 131-141).

Detroit Police Officer John Moore stated that at 12:50 or 1:00 p.m. he and his partner, Officer Barnes, were dispatched to 11635 Archdale. They were in full uniform and riding in a marked vehicle. He spoke with Mr. and Mrs. McGhee and Marcus Nixon, as well as other responding officers who were already present. He later spoke with complainant Kathleen Horton over the telephone, suspecting that she may have actually been a perpetrator. (T1 142-145).

Detroit Police Officer Eric Brown stated that he was on patrol with his partner, Tracy Hamilton. At about 1:00 p.m. [t]hey received a radio run to the Oil Dispatch at Plymouth and Southfield. Exiting the scout car, they received a report from Officer Waligura of a black male with a gun running across the Southfield Freeway in an area about 1,000 feet north of their location. They drove toward Waligura, who was standing on the berm. He pointed across the freeway to a person running up the embankment and onto the other service drive. Brown stated that he

observed the person throw a weapon into a yard. Brown and Hamilton crossed over the freeway and arrested Appellant. As they were placing him in custody, Officers Curtis Shell and Stacy Amerine arrived. Brown notified them that he had seen a gun tossed. Appellant was transported to the Sixth Precinct in Brown's patrol car. He did not recall whether he had conveyed any other prisoners. Brown also stated that he was informed by Officer Shell that a blue steel revolver had been recovered. (T1 147-159).

Detroit Police Officer Curtis Shell stated that he was on duty with his partner, Stacy Amerine. At about 1:00 p.m. they received a priority from another unit regarding a man running across the freeway with a gun. When they arrived, a man was already in custody and officers were searching for a weapon. He was told that a weapon had been thrown over a gate and was instructed to look in a yard. Shell stated that he searched the yard and found a Colt .38 caliber revolver loaded with five rounds. It was placed in evidence by Officer Tracy Hamilton (T1 160-165).

Detroit Police Officer Tracy Hamilton stated that she and her partner, Eric Brown, received a radio run to the Oil Dispatch at Plymouth Road and the Southfield Expressway. They spoke with the complainant, who told them that he had been robbed at his home. While there, they received a report from another unit that a man was running westbound across the freeway. They saw a man exit the freeway on the other side. They drove around to the other side, exited their vehicles and approached Appellant. She told him to drove the weapon, and that he threw it over a fence. She and her partner apprehended him. She was later given a weapon by Officer Shell, which she placed [i]n evidence. Appellant was transported to the precinct. About six hours later she searched the rear of her vehicle and found a wallet stuffed under the seat cushion. She stated that it contained credit cards and identification belong to a Mr. Nixon, which she also placed [i]n evidence. (T1 166-178).

Detroit Police Officer Samuel Dunigan is the officer in charge of the case. He stated that at about 6:35 p.m. he interviewed Appellant in the presence of Officer Williams. After he advised Appellant of his constitutional rights, Appellant replied "I refuse to make a statement." He stated that he then "discussed" the crime and that Appellant admitted having a gun, placing a gun to Mrs. McGhee's head, entering the house and having two accomplices. Dunigan further [testified] that he asked to reduce the discussion to writing, but that Appellant refused. Dunigan later became aware of a wallet placed [i]n evidence by Officer Hamilton. He stated that it was destroyed on March 18, 2004. Dunigan oversaw the police lineup attended by Mr. McGhee, Mrs. McGhee, and Mr. Nixon. Both McGhees positively identified Appellant. Nixon did not. Dunigan was aware that the fourth complainant, Kathleen Horton, was involved. He stated that he had made three or four unsuccessful attempts to contact her. The Investigator's Report indicated that $305.00 was taken from Appellant following his arrest. (T1 179-197; T2 3-11).

Detroit Police Officer Jeffrey Williams stated that he met Nixon and the McGhees on Archdale Street. Afterwards, he went to the Sixth Precinct, where he interviewed Appellant. According to Williams, Appellant was advised of his rights and told them that he had gone to the house and participated in the robbery.

Williams could not recall the specifics of the conversation because Appellant did not want it reduced to writing. (T2 13-23). The People rested. (T2 23).

Appellant's motion for directed verdict was granted as to complainant Kathleen Horton only. (T2 23-24). His motion to dismiss based upon the destruction of the wallet was denied. (T2 25-26).

Appellant then testified that following a 15 year prison term for criminal sexual conduct, he was released on march 13, 2003. He then served one year in the Oakland County Jail and was released January 10, 2004. He was living with his parents in Taylor, where he registered as a sexual offender. Unable to get along with his alcoholic father, he moved in with his cousin, where he met Leslie Horton, a/k/a Kathleen Horton, a/k/a Neicy, who is his girlfriend Cynthia's best friend. He was working at a temporary staffing company and needed a car to get to the various job sites. An old friend sold used cars. On February 7, 2004, he went with Horton to purchase [a] car. Two weeks later, the car had mechanical problems. Horton told him that she had a friend named McGhee who works on cars. On February 26, 2004, he awoke and saw that his car was gone. He paged Horton, who told him that she was going to get his car fixed. He asked her to pick him up so that he could go to work to get his paycheck. He, Cynthia, his cousin Kevin Wiley, his other cousin Kevin Wiley, Horton and her cousin Deek drove to the an [sic] oil change shop on Southfield and Plymouth. Horton identified McGhee's nearby house and told that she was going there. Appellant went to the store to purchase lottery tickets. When he returned, he saw Deek pushing a truck in the service drive, Horton and his cousin Kevin driving away in his car. He and Cynthia walked toward McGhee's house, where he saw his other cousin Kevin running from [the] property with a gun in his hand and a mask over his face. He thought that his cousin had been involved in a drug transaction which had gone awry. He took the gun from Kevin, who ran away. When plain clothes officers in an unmarked car arrived, he thought they were the drug dealers and that they were after him so he ran. When uniformed officers in marked cars joined the chase, he became scared and ran. He surrendered after discarding the gun. At the police station the police took his money and his wallet, which contained his identification, check stubs and the lottery tickets which he had just purchased.

Def.-Appellant's Br. on Appeal, in *People v. Bailey*, No. 258705 (Mich. Ct. App.), at 1-5.

C.    *Exhaustion*

Respondent contends that petitioner's sixth habeas claim, as well as a portion of his first claim, are unexhausted, and that the entire petition must be dismissed on this basis. The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears

that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law. *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47.

Exhaustion is not required only if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

Assuming that petitioner's claims are partially unexhausted, the Court should nevertheless

consider the claims on the merits. Despite the exhaustion requirement, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *See Cain*, 947 F.2d at 820. Because, as discussed below, petitioner is not entitled to relief on any of his claims, the Court should dismiss the claims on the merits rather than require further review in the state courts.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Destruction/Suppression of Evidence (Claims I & II)*

In his first two claims, petitioner contends that he was denied a fair trial by the destruction of Marcus Nixon's wallet, which was found in the police car in which he was transported, and by the prosecutor's failure to disclose that the evidence technicians had found no fingerprints at the scene of the crime. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because

it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

The *Brady* rule extends to evidence which is not suppressed, but is lost or destroyed. *See California v. Trombetta*, 467 U.S. 479, 489 (1984). This rule, however, applies only to material exculpatory evidence, that is, evidence which "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488-89. However, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In a case involving potentially useful evidence, the defendant must "show bad faith on the part of the police." *Id*.; *see also*, *Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam). As the Sixth Circuit has explained, *Trombetta* and *Youngblood* establish "[s]eparate tests . . . to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible,

versus cases where 'potentially useful' evidence is not accessible." *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

Where the *Youngblood* bad faith requirement applies, "[t]he presence or absence of bad faith by the [government] for the purposes of the Due Process Clause must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id*. at 56 n.*. Thus, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *Wright*, 260 F.3d at 571; *see also*, *United States v. Garza*, 435 F.3d 73, 75 (1st Cir. 2006). Further, the requirement that a defendant show bad faith is not eliminated by the existence of a pending discovery request for the evidence, *see Fisher*, 540 U.S. at 548, nor does it depend on "the centrality of the contested evidence to the prosecution's case or the defendant's defense[.]" *Id*. at 549.

Finally, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). As the Supreme Court has explained, the government in a criminal prosecution "do[es] not have a constitutional duty to perform any particular test." Thus, a constitutional violation does not arise merely because the government destroyed evidence without performing any particular test on it.

2.    *Destruction of the Wallet*

Petitioner first contends that he was denied a fair trial by the prosecution's failure to produce Nixon's wallet, which had been lost or destroyed prior to trial. The Michigan Court of Appeals rejected petitioner's claim, reasoning that "[t]here is nothing in the record to indicate that bad faith

was involved [in the destruction of the wallet], and defendant makes no such claim," and that "there is no indication that this evidence was exculpatory." *Bailey*, 2006 WL 954189, at *1, slip op. at 2. The Court should conclude that this determination was reasonable.

At the outset, the court of appeals did not apply an incorrect legal standard in evaluating petitioner's claim, contrary to his argument. The legal standard set forth by the court of appeals tracks the standard established by the Supreme Court in *Youngblood*. *Compare Bailey*, 2006 WL 954189, at *1, slip op. at 1. Further, contrary to petitioner's argument, the wallet did not have an exculpatory value that was readily apparent to the police. The existence of the wallet in the police car in which petitioner was transported tended to implicate petitioner, not exonerate him. The only potentially exculpatory value which petitioner contends the wallet may have had is that a fingerprint test would have shown that his fingerprints were not on the wallet. Because only further testing on the wallet could have revealed its supposed exculpatory value, it constitutes "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 58; *see Schad v. Schriro*, 454 F. Supp. 2d 897, 914 (D. Ariz. 2006) ("The presence, let alone the exculpatory value, of fingerprints . . . is a matter of pure speculation" and "falls into the 'potentially useful' category" to which "the *Youngblood* standard applies."); *cf. Wright*, 260 F.3d at 571.

Thus, as the court of appeals correctly explained, petitioner can show a due process violation only by showing that the wallet was destroyed by the police in bad faith. And, as the court of appeals reasonably concluded, petitioner failed to make this showing. Nothing in the record suggests any bad faith on the part of the police in destroying the wallet, and petitioner posits no evidence of bad faith. He does argue that the destruction was in violation of police department

policy. It is true that destruction in compliance with department policy will usually negate a finding of bad faith. *See Fisher*, 540 U.S. at 548. However, the converse is not necessarily true. While a failure to follow proper procedures may be probative of bad faith, standing alone such a failure is not sufficient to demonstrate bad faith on the part of the police. *See United States v. Greenwood*, ___ Fed. Appx. ___, 2007 WL 2200693, at n.2 (4th Cir. Aug. 2, 2007); *United States v. Espinoza-Lopez*, 170 Fed. Appx. 488, 490 (9th Cir. 2006); *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993); *Guzman v. State*, 868 So. 2d 498, 509 (Fla. 2003). At most, the evidence in the record shows that the police were grossly negligent in destroying the wallet in violation of police procedure. This is insufficient, however, to constitute bad faith. *See Wright*, 260 F.3d at 571. Petitioner has pointed to no "independent evidence that the [police were] somehow improperly motivated," *United States v. Gallant*, 25 F.3d 36, 39 n.2 (1st Cir. 1994), or that the police "made a conscious effort to harm him or violate his rights." *United States v. Seibert*, 148 F. Supp. 2d 559, 571 (E.D. Pa. 2001) (citing *Trombetta*, 467 U.S. at 488 ("The record contains no allegation of official animus toward respondents or of a conscious effort to suppress exculpatory evidence.").

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Suppression of Fingerprint Evidence*

Petitioner next contends that the prosecution violated *Brady* by failing to disclose exculpatory fingerprint testing performed by the police. This claim is based on the testimony of Detective Jeffery Williams. The bulk of Williams's testimony related to his conversation with petitioner at the police station. However, Williams also testified that, while he was at the scene, evidence technicians arrived and processed the scene. *See* Trial Tr., Vol. II, at 14. On cross-

examination, Williams testified in response to counsel's questions that the evidence technicians generally do things such as taking photographs and retrieving fingerprints. *See id*. at 19-20. During closing argument, defense counsel seized on this testimony, arguing that there were evidence technicians at the scene but the police had presented no evidence that petitioner's prints were found at the scene, and that it was unclear whether the evidence technicians even retrieved fingerprints. *See id*. at 125. On rebuttal, the prosecutor suggested that maybe there were no fingerprints because, based on the testimony of the victims, petitioner was directing the events and his accomplices were the ones actually searching for property to steal. *See id*. at 131-32.

Based on this testimony and argument, petitioner asserts that the prosecution violated *Brady* by failing to disclose the evidence technicians' reports. The Michigan Court of Appeals rejected this claim, explaining that neither Williams's testimony nor the prosecutor's argument "suggest[s] that the prosecution possessed fingerprint evidence that was favorable to defendant, *i.e.*, fingerprints belonging to persons defendant alleged had committed the offenses. In fact, defendant points to no evidence establishing that the evidence technicians even recovered fingerprints." *Bailey*, 2006 WL 954189, at *4, slip op. at 4. The Court should conclude that this determination was reasonable.

It is not entirely clear whether petitioner's argument is based on disclosure at trial of the fact that evidence technicians were at the scene and the absence of any evidence that his prints were recovered, or on the supposition that the evidence technicians did recover prints that belonged to other perpetrators. In either event, however, his claim fails. To the extent that petitioner's claim is based on the fact that evidence technicians processed the scene and the absence of any evidence that his fingerprints were recovered, he cannot show any suppression by the prosecution. While petitioner claims that he did not have this information prior to trial, it was disclosed during trial by

17

Officer Williams's testimony. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the jury, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). "[I]f previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994). Here, petitioner's counsel argued to the jury that fingerprints were taken at the scene yet there was no evidence that petitioner's fingerprints were recovered. Thus, petitioner was able to make use of the information disclosed by Officer Williams, and he was not prejudiced by the delayed disclosure.

To the extent petitioner bases his claim on the supposition that the fingerprints of other possible perpetrators were recovered, his claim is nothing more than speculation. As the court of appeals observed, nothing in the record suggests that any fingerprint evidence existed, much less that it was favorable to petitioner. Petitioner has provided no evidence that material, exculpatory evidence was developed by the evidence technicians, nor has he presented any evidence or argument which even suggests that this was the case. Petitioner's allegations are therefore "speculative, conclusory and unsupported, and thus must be rejected." *Franza v. Stinson*, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999); *see also*, *Carter*, 218 F.3d at 601 (petitioner bears burden of establishing each element of *Brady* claim); *cf. United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.");

*United States v. Stewart*, 325 F. Supp. 2d 474, 501 (D. Del. 2004).

Accordingly, the Court should conclude that the Michigan Court of Appeals's rejection of petitioner's claim was a reasonable application of *Brady*, and that petitioner therefore is not entitled to habeas relief on this claim.

4.    *Failure to Give Adverse Inference Instruction*

Petitioner also argues, in connection with his claim relating to the destroyed wallet, that the trial court erred in failing to give an instruction to the jury that it could draw an adverse inference from the fact that the wallet had been destroyed. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, petitioner did not request an adverse inference instruction. The failure of a trial court to give an unrequested instruction *sua sponte* does not raise a constitutional claim cognizable on habeas review. *See Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974); *Peoples v. Hocker*, 423 F.2d 960, 963 (9th Cir. 1970). Second, petitioner was not entitled to an adverse inference instruction under state law. Under Michigan law, an adverse inference instruction based on police destruction of evidence is appropriate only when the police acted in bad faith. *See People v. Davis*, 199 Mich. App. 502, 515, 503 N.W.2d 457, 463 (1993). As discussed above, there is no evidence that the police acted in bad faith in destroying the wallet, and thus petitioner was not entitled to an adverse inference instruction under state law. And because he was not entitled to such an instruction under state law, the failure of the trial court to give the instruction did not deprive petitioner of a fair trial. *See Thomas v. Lecureux*, 8 Fed. Appx. 461, 464-65 (6th Cir. 2001). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Prosecutorial Misconduct (Claim IV)*

Petitioner next claims that he was denied a fair trial by several instances of prosecutorial misconduct. Specifically, he claims that he was denied a fair trial by the prosecution's failure to exercise due diligence to locate *res gestae* witness Kathleen Horton, and by the prosecutor's comments during closing argument. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.      *Failure to Locate Res Gestae Witness*

Petitioner first contends that he was denied a fair trial when the prosecutor failed to use due diligence to locate Kathleen Horton, who had been listed by the prosecutor as a *res gestae* witness.

The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is true that, at the time of petitioner's trial, Michigan law required a prosecutor to list all *res gestae* witnesses. *See* MICH. COMP. LAWS §§ 767.40-.40a; *see also*, *People v. Jones*, 641 Mich. App. 659, 236 N.W.2d 531 (1975); *People v. Anderson*, 64 Mich. App. 218, 235 N.W.2d 746 (1975). Under Michigan law, a *res gestae* witness is "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v. Hadley*, 67 Mich. App. 688, 690, 242 N.W.2d 32, 34 (1976). The statute does not, however, require the prosecutor to call all listed witnesses. In any event, any failure of the prosecutor with respect to a *res gestae* witness raises solely a claim of state law. It is well established that errors of state law do not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, petitioner's claim that the prosecutor violated state law regarding the production of res gestae witnesses is not cognizable on habeas review. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001) (Tarnow, J.).

Petitioner's reliance on the Confrontation Clause does not alter this conclusion. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI. However, contrary to the implication of petitioner's argument, under the Sixth Amendment "[a] defendant has no right to confront a 'witness' who provides no evidence at trial. Nor is the government required to call all of the witnesses to a crime." *United States v. Heck*, 499 F.2d 778, 789 n.9 (9th Cir. 1974) (citations

omitted) (internal quotation omitted); *see also*, *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972); *United States v. Polisi*, 416 F.2d 573, 579 (2d Cir. 1969); *Mitchell v. United States*, 359 F.2d 833, 836 n.3 (7th Cir. 1966).  For this reason, the Sixth Circuit and Judges of this Court have repeatedly found that the prosecution's failure to endorse or call a *res gestae* witnesses in accordance with Michigan law does not raise a constitutional claim cognizable on habeas review. *See, e.g.*, *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at *2 (6th Cir. Nov. 8, 1999); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. July 19, 1995) (per curiam); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) (per curiam); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam); *Johnson*, 159 F. Supp. 2d at 601.

Petitioner also argues that he was denied a fair trial when the trial court failed to give an adverse inference instruction based on the prosecutor's failure to produce Horton.  However, the Michigan Court of Appeals concluded that the record established that the prosecutor had exercised due diligence in attempting to locate Horton, and that an adverse inference instruction was therefore not warranted under state law.  The officer-in-charge testified that he attempted to contact Horton three or four times, but was not successful.  *See* Trial Tr., Vol. II, at 4.  There was no further questioning of the officer-in-charge on this issue by the prosecutor or defense counsel, and petitioner has not suggested any additional steps that the officer should have taken to locate Horton.  As with petitioner's adverse inference instruction claim relating to the missing wallet, the court of appeals's state law determination precludes a finding that petitioner was denied a fair trial by the trial court's

failure to give an adverse inference instruction.[2]

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Comments*

Petitioner also contends that he was denied a fair trial by several of the prosecutor's comments during closing argument. The Court should disagree.

Petitioner first challenges the prosecutor's comment during closing argument suggesting that there was no explanation for petitioner to have been driving around the location of the oil change shop unless he was looking for Robert McGhee in order to "eliminate" him because McGhee would be able to identify him. *See* Trial Tr., Vol. II, at 106, 116. This argument was not improper. McGhee testified that, when he escaped and went into the oil change shop, he remained there because "[o]ne was looking for me. One was coming in the Oil Exchange, with the gun in his hand looking for me[.]" Trial Tr., Vol. I, at 83. Thus, the prosecutor's comment was a permissible characterization based on the evidence admitted at trial, and was not improper. *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing

---

[2]Petitioner was originally charged with a fourth count of armed robbery under the theory that Horton was a victim. It later became questionable whether Horton was a victim or an accomplice. The prosecution having produced no evidence relating a robbery of Horton, the trial court granted petitioner's motion to dismiss with respect to this count. Thus, petitioner was not prejudiced in any way with respect to the specific count of armed robbery from Horton.

argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").

Petitioner also contends that he was denied a fair trial when he argued that petitioner had lied. In response to petitioner's testimony that he got the gun from one of the perpetrators, who had handed it to him while he was going to the McGhees' to check on his car, the prosecutor argued that, under petitioner's version, the perpetrators had run out of the house with scarfs on their faces, and had clearly committed some crime. Further, petitioner knew that he could not possess a gun as a convicted felon. The prosecutor continued:

> What does your common sense tell you you would do under that circumstance? "Get out of here; I don't want that gun. What the heck did you do? Get away from me. I'm not touching that gun." That's what your common sense tells you you would do.
> But you see, common sense doesn't give the defendant an excuse. It doesn't give him an out. So he has to concoct a story. So what does he do? You tell a big ass lie, and you hope somebody believes it.

Trial Tr., Vol. II, at 112. As with the prosecutor's comment relating to petitioner looking for Robert McGhee, this comment was based on the evidence in the case. Because the prosecutor's argument was based on the facts of the case, it did not deprive petitioner of a fair trial. *See Williams*, 913 F. Supp. at 1163 (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]"); *cf. Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"). Further, "[i]t is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may

be inferred from circumstantial evidence." *U.S. v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000) (internal quotation omitted). Thus, the prosecutor was permitted to urge the jury to use its common sense in evaluating the testimony offered at trial. *See United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F. Supp. 356, 366 (D. Del. 1988).

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

G.      *Judicial Partiality (Claim V)*

Petitioner next claims that the trial judge was biased against him and demonstrated partiality. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29; Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter,

habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id.* (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id.* (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id.* at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v.*

*Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

Unlike an appellate court on direct appeal, a federal habeas court does not exercise supervisory powers over the state courts, *see Murphy v. Florida*, 421 U.S. 794, 797 (1975), and thus a federal court's habeas jurisdiction is limited to correcting violations of federal constitutional law; it does not have the authority to correct perceived injustices absent a constitutional violation. *See Guinan v. United States*, 6 F.3d 468, 470-71 (7th Cir. 1993); 28 U.S.C. § 2254(a) (emphasis added) (federal court has jurisdiction to entertain petition brought by state prisoner "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").[3]

As the Sixth Circuit has explained:

> Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction. In collateral proceedings, the test is whether the errors alleged could have rendered the trial fundamentally unfair. To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.

*McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (internal quotations, citations, and alterations omitted). Or as the Ninth Circuit has explained, on habeas review "the question is not simply whether the trial judge committed misconduct or whether [a federal appellate court] would reverse a conviction obtained after a trial in which a federal judge behaved in the same manner. Rather, we must ask whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *accord Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997). In other

---

[3]In contrast, a federal court may use its supervisory powers over lower federal courts and federal prosecutors to correct injustices. *See United States v. Leslie*, 783 F.2d 541, 569-70 (5th Cir. 1986) (en banc) (Williams, J., dissenting), *vacated*, 479 U.S. 1074 (1987); *United States v. Crawford*, 466 F.2d 1155, 1157 (10th Cir. 1972).

words, to warrant habeas relief "there must be an 'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness.'" *Duckett*, 67 F.3d at 740 (quoting *United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982)).

2.    *Analysis*

Petitioner points to two factors which he claims demonstrate the trial judge's bias. First, the trial judge gave instructions to the jury that he formulated himself, rather than relying on the standard jury instructions. Second, in response to a note from the jury asking substantive questions relating to evidence which was not adduced at trial,[4] the judge expressed his frustration with the jury to counsel, but outside the jury's presence:

> I mean, it really burns me that we hear this kind of evidence, and people send out stupid questions after I told them, you are not detectives. I'm going to tell them that again.

Trial Tr., Vol. II, at 164. Petitioner contends that this statement shows that the trial judge was frustrated that the jury was not reaching his desired verdict–guilty–and that the judge was therefore biased. The Court should disagree.

Petitioner has pointed to no circumstances raising an inference of bias on the part of the trial judge, nor has he pointed to any evidence of bias other than the two facts mentioned above. Those two facts alone do not demonstrate bias. In the first place, the judge's formulation of the jury instructions and response to the jury's note are the type of judicial rulings which "alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555; *see also*, *id*. at 556 ("A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's

---

[4]The jury posed three questions: "Why six months before a lineup? Were guys in the lineup asked to speak so complainants could hear their voices? Where [sic] any fingerprints taken by technicians?" Trial Tr., Vol. II, at 163.

ordinary efforts at courtroom administration–remain immune."). Second, the judge's comment to counsel about the jury note gives no indication that the judge was upset with the jury because it was not reaching a guilty verdict; indeed, the judge's comment does not even indicate that a guilty verdict would have been his preferred outcome. On the contrary, the judge explicitly disclaimed any view on the merits in his more temperate response in the presence of the jury:

> Now, I have to explain to you very carefully, and pick my words very carefully, because I don't want to offend anyone.
> But do you remember when I told you when you went in there that you are not to be detectives, or defense attorneys, or prosecutors? You take the evidence that you heard in the courtroom.
> I can't tell you what the evidence is. You heard the evidence.
> The only questions in this case is, were those two people robbed, three people robbed? Was that house broken into, and did this man do it. That's all we're asking you to do. Forget about all of this, you heard the case.
> I don't decide the facts. You heard the facts. You decide the facts. If I were to sit here and tell you what the facts were, the Court would be deciding the evidence. And I can't do that. You do that.

Trial Tr., Vol. II, at 164-65. In short, the initial comment made outside the presence of the jury merely expressed frustration that the jury was not following the court's instruction to confine itself to the evidence presented at trial. Thus, as the Michigan Court of Appeals explained, the comments "were facially neutral; they do not reflect [partiality] and were not calculated to unduly influence the jury against defendant." *Bailey*, 2006 WL 954189, at *5, slip op. at 5; *see Bible v. Schriro*, 497 F. Supp. 2d 991, 1029-30 (D. Ariz. 2007).

Further, petitioner cannot claim that he was denied a fair trial by the judge's comment in response to the jury note. That comment was made outside the jury's presence, and "comments by the judge in the absence of the jury . . . provide no basis for reversal." *United States v. Rolda-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990); *see also*, *United States v. Palma*, ___ F.3d ___, 2008 WL 48447, at *5 (11th Cir. Jan. 4, 2008). The judge's response to the note in front of the jury was much

more temperate, as noted above.  The response correctly told the jury that it alone was the judge of the facts, and that it should base its decision on the evidence presented at trial.  Petitioner does not argue that this response was in any way improper or deficient.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Ineffective Assistance of Counsel (Claim III)*

Petitioner next raises several claims that his counsel was constitutionally ineffective.  Specifically, petitioner claims that counsel was ineffective for failing to: (1) request adverse inference instructions; (2) object to prosecutorial misconduct; (3) subpoena witnesses; and (4) ensure that he had proper clothing for trial.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that

counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      *Analysis*

a. *Failure to Request Instructions and to Object*

Petitioner first contends that counsel was ineffective for failing to request adverse inference instructions with respect to the failure of the prosecutor to produce the wallet or Horton, and that counsel was ineffective for failing to object to the instances of prosecutorial misconduct.  As explained above, each of these underlying claims is without merit, and thus counsel cannot be deemed ineffective for failing to request the instructions or to object.  *See Lee v. Ricks*, 388 F. Supp. 2d 141, 157 (W.D.N.Y. 2005) (counsel not ineffective for failing to request instruction which was not warranted under state law); *White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).  *See generally, Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection).  Accordingly,

the Court should conclude that petitioner is not entitled to habeas relief on these claims.

### b. Failure to Subpoena Witnesses

Petitioner next contends that counsel was ineffective for failing to subpoena three witnesses: his mother, his employer, and Cynthia Hub, the woman who was with him in the car at the time he was arrested. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also*, *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007). Here, petitioner's claim fails because he has not provided any indication, much less evidence, with respect to the purported testimony of these missing witnesses or that they would have testified at trial. In order to succeed on a claim that counsel was ineffective for failing to call witnesses, petitioner "must prove that the proposed witnesses would have testified favorably to his defense." *Johnson v. Nagle*, 58 F. Supp. 2d 1303, 1356-57 (N.D. Ala. 1999), *aff'd sub nom. Johnson v. Alabama*, 256 F.3d 1156, 1186-87 (11th Cir. 2001); *see also*, *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). To meet this burden, petitioner "must state exactly what testimony [the witnesses] would have supplied and how such testimony would have changed the result." *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *21 (W.D.N.Y. Oct. 23, 2007) (citing *Anderson*, *supra*).

Petitioner has not provided any evidence, such as affidavits from the missing witnesses, detailing what their testimony at trial would have been had they been called by counsel. Nor has

petitioner provided, either in his numerous briefs in this Court or in the state courts, any detailed description of the witnesses' purported testimony. "Because petitioner has not given a description of the subject matter of the potential testimony, he had not raised a cognizable claim under *Strickland*." *Diaz v. Curtis*, No. 99-CV-72550, 2000 WL 1769571, at *12 (E.D. Mich. Oct. 31, 2000) (Hood, J.) (citing *Anderson*, *supra*). As this Court has explained in identical circumstances:

> Without some showing of their proposed testimony, this Court is unable to determine if trial counsel's failure to investigate or to call these individuals as witnesses was either a professional lapse or a strategic or tactical choice. The Court is also unable, in the absence of a showing as to what the witnesses' testimony would be, to determine whether Petitioner was prejudiced by the failure of trial counsel to interview or call these witnesses. *United States ex. rel. Jones v. Chrans*, 187 F.Supp.2d at 1009. In this case, trial counsel's failure to investigate, interview, or present these potential witnesses does not amount to the ineffective assistance of counsel, because Petitioner has failed to indicate the availability of these purported witnesses or specify the content of their testimony. *Dell v. Straub*, 194 F.Supp.2d 629, 650 (E.D.Mich.2002) (citations omitted). Petitioner's vague and speculative allegations that trial counsel was ineffective for failing to investigate these witnesses does not entitle him to habeas relief. *Id.*

*Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) (Hood, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  *Failure to Provide Clothing*

Finally, petitioner contends that counsel was ineffective for failing to provide proper clothing for trial. At trial, petitioner appeared in a white undershirt and what he characterizes as dirty pants. However, petitioner does not explain how this prejudiced him. Petitioner does not claim that he was dressed in recognizable prison clothing. Were such the case, his appearance may have denied him a fair trial because a criminal defendant generally has a due process right to be tried in civilian clothing which does not emphasize his status to the jury. *See Estelle v. Williams*, 425 U.S. 501, 505-06 (1976). However, "although a defendant may not be compelled to stand trial in identifiable

prison garb, a defendant has no right under state or federal law to be provided with any particular type of civilian clothing." *Van Gorder v. Allerd*, 387 F. Supp. 2d 251, 261 (W.D.N.Y. 2005) (citation omitted); *see also*, *Jefferson v. Sherrer*, No. 03-1414, 2005 WL 2777557, at *6-*7 (D.N.J. Oct. 25, 2005); *Adams v. Smith*, 280 F. Supp. 2d 704, 718 (E.D. Mich. 2003) (Tarnow, J.). Here, petitioner does not suggest any facts which would have caused the jury to view him with suspicion because he was wearing identifiable prison clothing, or provide any other evidence that his appearance prejudiced him before the jury. In these circumstances, petitioner cannot show that he was prejudiced by counsel's failure to provide him with other clothing. *Cf. Hill v. Mitchell*, 400 F.3d 308, 320-21 (6th Cir. 2005) (petitioner not entitled to habeas relief based on appearance in prison garb where petitioner failed to demonstrate prejudice). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Sentencing (Claim VI)*

Petitioner also claims that the trial judge erred in sentencing him as a third habitual offender because he was never properly charged with being an habitual offender nor convicted of being such an offender. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner's claim is based on the old version of Michigan's habitual offender statute, which required that habitual offender status be charged as a crime and proven to a jury. *See People v. Morales*, 240 Mich. App. 571, 576-83, 618 N.W.2d 10, 13-16 (2000) (discussing history of MICH. COMP. LAWS §§ 769.10-.13 and case law applying those provisions). In 1994, however, the Michigan legislature amended the habitual offender statute to make habitual offender status a sentence enhancement rather than a separate crime. As the *Morales* court explained:

> The landscape of the law was again fundamentally altered when the Legislature amended the habitual offender statutes in 1994. Under the current

> statutory scheme, the issue of defendant's status as an habitual offender is no longer
> a jury question. Now, the issue is to be resolved by the trial court either at sentencing
> or at a separate hearing held postconviction on the underlying charge. MCL 750.13;
> MSA 28.1085. Additionally, the prosecutor is no longer required to file a
> supplemental information. Instead, the prosecutor may file a written notice of intent
> to seek sentence enhancement.

*Morales*, 240 Mich. App. at 583, 618 N.W.2d at 16. Thus, under Michigan law the prosecutor was not required to file an information charging petitioner with being an habitual offender.

As a matter of due process, petitioner was entitled only to reasonable notice of the prosecutor's intent to seek an enhancement based on petitioner's habitual offender status and an opportunity to challenge that status. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). The sentencing transcript makes clear that, at the latest, petitioner's status as a third habitual offender as a basis for enhancing his sentence was set forth in the presentence report, and petitioner had the opportunity to address this issue at sentencing. *See* Sentence Tr., at 4. Due process required nothing more, *see Oyler*, 368 U.S. at 452-54, and any failure by the prosecutor to comply with the Michigan habitual offender statute raises an issue of state law not cognizable on habeas review. *See Randolph v. Romanowski*, No. 2:06-CV-11201, 2007 WL 4181269, at *11 (E.D. Mich. Nov. 27, 2007) (Cleland, J.); *McCann v. Trombley*, No. 05-CV-72556, 2007 WL 2318730, at *14 (E.D. Mich. Aug. 10, 2007) (Steeh, J., adopting report of Komives, M.J.); *Taylor v. Jones*, No. 05-CV-73909, 2007 WL 1725384, at *12-*13 (E.D. Mich. June 13, 2007) (Edmunds, J.); *Ivory v. Jackson*, No. 04-CV-71279, 2005 WL 1030325, at *9 (E.D. Mich. Apr. 27, 2005) (Roberts, J.).

Nor does petitioner's sentence as a third habitual offender run afoul of the *Apprendi* rule. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v.*

*Washington*, 542 U.S. 296 (2004), the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original). Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt.

Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence

must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

Thus, as a general matter *Blakely* is inapplicable to Michigan sentences here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict."). Because *Apprendi* and *Blakely* are concerned only with the maximum sentence, *see Harris v. United States*, 536 U.S. 545, 557 (2002), it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See, e.g.*, *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Drohan,* 475 Mich.

at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

This rationale does not apply directly in the habitual offender context. In some cases, a sentence enhancement based on a Michigan defendant's prior crimes may actually increase the maximum sentence to which the defendant is exposed. *See* MICH. COMP. LAWS §§ 769.11-.12. However, this fact does not implicate *Apprendi* and *Blakely* here for two reasons. First, despite how the habitual offender statute may operate with respect to other crimes, here petitioner was charged and convicted of armed robbery, a crime which already carried a maximum penalty of imprisonment for any term of years or life. *See* MICH. COMP. LAWS § 750.529. Thus, the jury's finding of guilt on the armed robbery charges authorized petitioner's sentence, regardless of any additional factual findings by the trial judge with respect to his habitual offender status.

Second, and more fundamentally, *Apprendi* is simply inapplicable to factual findings relating to a defendant's prior criminal record. The *Apprendi* holding explicitly exempts from the jury factfinding requirement the fact of a prior conviction: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Supreme Court has consistently referred to the *Apprendi* rule in this manner. *See Booker*, 543 U.S. at 244; *Blakely*, 542 U.S. at 303. Thus, the trial judge was permitted under *Apprendi* to find that petitioner had prior criminal convictions authorizing his sentence as an habitual offender. *See United States v. Sanders*, 207 Fed. Appx. 602, 613 (6th Cir. 2006); *United States v. Bradley*, 400 F.3d 459, 462-63 (6th Cir. 2005).

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sentencing claim.

J.      *Sufficiency of the Evidence*

Although not set forth as a separate claim, in the Michigan Court of Appeals petitioner's counsel raised an argument as part of petitioner's first claim that there was insufficient evidence to convict petitioner of armed robbery with respect to Patricia McGhee. Petitioner makes passing reference to this argument in his papers in this Court. It is not clear if petitioner is asserting this claim as a basis for habeas relief. To the extent he is doing so, the Court should conclude that the claim is without merit.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez*

*v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

2.    *Analysis*

Under Michigan law, "[t]he elements of armed robbery are (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *Bailey*, 2006 WL 954189, at *3, slip op. at 3; *see also*, *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (Gadola, J.), *aff'd*, 173 Fed. Appx. 437 (6th Cir. 2006); *People v. Smith*, 478 Mich. 292, 319, 733 N.W.2d 351, 365 (2007). Here, Patricia McGhee testified that petitioner approached her with a gun and forced her into the house, threatening her with harm if she did not comply. Petitioner and his accomplices searched the house for property to steal, eventually leaving the house with her husband's wallet and gun. *See* Trial Tr., Vol. I, at 116-30. This testimony alone provides sufficient evidence that petitioner assaulted Patricia McGhee while armed, and that he took property from her presence.

Petitioner's claim appears to be based on the fact that Patricia McGhee testified that petitioner only stole items belonging to her husband, not property belonging to her. Under Michigan

law, however, this fact is irrelevant. "[I]n an armed robbery case, the prosecutor need not show that the victim actually owned the property taken. Rather, the prosecutor need only show that the property was taken in the victim's 'presence' and that the victim's right to possess the property was superior to the defendant's right to possess it." *People v. Rodgers*, 248 Mich. App. 702, 707, 645 N.W.2d 294, 298 (2001); *see also*, *People v. Small*, 467 Mich. 259, 262 & n.3, 650 N.W.2d 328, 330 & n.3 (2002). This was the rule applied by the Michigan Court of Appeals, *see Bailey*, 2006 WL 954189, at *3, slip op. at 3, and there can be no doubt that Patricia McGhee's right to possess her husband's property was superior to petitioner's right to possess that property. Because the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense *as defined by state law*," *Jackson*, 443 U.S. at 324 n. 16 (emphasis added), this Court may not upset the Michigan Court of Appeals's conclusion that the evidence was sufficient to establish the elements of armed robbery as explicated by the Michigan courts. Accordingly, to the extent that petitioner is raising a claim that the evidence was insufficient to convict him of the armed robbery of Patricia McGhee, the Court should conclude that this claim is without merit.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/14/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on January 14, 2008.

s/Eddrey Butts
Case Manager