UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JERRY DOWELL BAILEY, JR.,

        Petitioner,

                                  Case No. 2:06-cv-14099

v.                              Honorable Denise Page Hood

WILLIE SMITH,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S**
**MOTION FOR RELIEF FROM JUDGMENT AND TO**
**SET ASIDE THE JUDGMENT (ECF NO. 42) AND DENYING**
**THE MOTION FOR AN EVIDENTIARY HEARING (ECF NO. 43)**

Petitioner Jerry Dowell Bailey, Jr., a state prisoner at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a *pro se* habeas corpus petition in 2006. The petition challenged Petitioner's state convictions for armed robbery, home-invasion, and two firearm offenses. The Court dismissed the petition in 2008.

Currently before the Court is Petitioner's motion for relief from judgment and to set aside the judgment under Federal Rule of Civil Procedure 60(b)(2) (newly discovered evidence) and Rule 60(d)(3) (fraud on the court). (ECF No. 42). Petitioner purports to have newly discovered evidence that two police officers concealed and destroyed exculpatory evidence during the State's prosecution of him. Petitioner wants the Court to set aside its judgment in this case or, at a

minimum, to conduct an evidentiary hearing so that he can expand the record on his claim that the police withheld and destroyed exculpatory evidence. (ECF No. 43).

Petitioner's argument under Rule 60(b)(2) constitutes an unauthorized second or successive habeas corpus petition, and it is untimely. Petitioner's argument under Rule 60(d)(3) lacks merit, because he has failed to show that an officer of the Court committed a fraud on the Court. An evidentiary hearing is not necessary to resolve Petitioner's Rule 60 motion. The Court will deny the motion for relief from, and to set aside, the judgment and the motion for an evidentiary hearing.

## I. BACKGROUND

Petitioner was charged with three counts of armed robbery, Mich. Comp. Laws § 750.529, one count of first-degree home invasion, Mich. Comp. Laws 750.110a(2), one count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and one count of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The testimony at Petitioner's jury trial in Wayne County Circuit Court has been summarized as follows:

> Robert McGhee stated that in February, 2004, he resided at 11635 Archdale in the City of Detroit. At about 1:00 p.m., he was in front of his garage, where he works on cars. With him were Marcus Nixon and a woman he knew as Neicy. [T]hree armed men came around the corner. One placed a gun to Nixon's head. The others took McGhee into the garage and made him lay on the floor while they rifled his

pockets and removed cash from his wallet.  Nixon and McGhee had their hands tied with belts.  Nixon was blindfolded.  Both were placed in a car in the garage.  A man identified as [Petitioner] placed a gun to his head and demanded his house keys.  The man went to the house after instructing the others to kill McGhee and Nixon if he was unable to enter the house.  Just then, McGhee's wife then came out to feed the dog.  All three men rushed her.  McGhee untied himself and ran from the car to an oil change shop down the street.  He hid there while shop employees summoned the police.  When the police arrived he was reunited with his wife and Nixon, who was locked in the garage.  Two weeks prior to trial, McGhee identified Appellant at a police lineup.  He was unable to describe the pistol or the other two weapons.  [Patricia McGhee offered substantively similar testimony.]

Marcus Nixon stated that on February 26, 2004, he was at the McGhee house.  A young woman arrived.  Minutes later, a man with a black gun hit him on the head and ordered him onto the floor of the garage.  His hands were tied behind his back and he was blindfolded with a rag. $50.00 cash and his wallet, which contained another $200.00, were taken from him. Two persons helped him into a car.  He then heard someone demand house keys from McGhee.  That person threatened to kill McGhee if McGhee gave him the wrong key.  Nixon later escaped the car and called 911 from a telephone in the garage.  He tried to leave, but a man exited the house with a gun and locked him in the garage. Minutes later, McGhee and the police arrived and he was released from the garage.  He later attended a lineup [six months after the crime] which included [Petitioner].  Nixon selected another person.

Detroit Police Officer Samuel Dunigan [was] the officer in charge of the case.  He stated that at about 6:35 p.m. he interviewed [Petitioner] in the presence of Officer Williams.  After he advised [Petitioner] of his constitutional rights, [Petitioner] replied "I refuse to make a statement."  He stated that he then "discussed" the crime and that [Petitioner] admitted to having a gun, placing a gun to Mrs. McGhee's head, entering the house and having two accomplices.  Dunigan further testified that he asked to reduce the discussion to writing, but that [Petitioner] refused.  Dunigan later became aware of a wallet placed in evidence by Officer Hamilton.  He stated that it was destroyed on March 18, 2004.  Dunigan oversaw the police lineup

attended by Mr. McGhee, Mrs. McGhee, and Mr. Nixon. Both McGhees positively identified [Petitioner]. Nixon did not. Dunigan was aware that the fourth complainant, Kathleen Horton, was involved. He stated that he had made three or four unsuccessful attempts to contact her. The Investigator's Report indicated that $305.00 was taken from [Petitioner] following his arrest....

[Petitioner's] motion for directed verdict was granted as to complainant Kathleen Horton only. His motion to dismiss based upon the destruction of the wallet was denied.

[Petitioner] then testified that following a 15 year prison term for criminal sexual conduct.... he moved in with his cousin, where he meet Leslie Horton, a/k/a Kathleen Horton, a/k/a Neicy, who is his girlfriend Cynthia's best friend. He was working at a temporary staffing company and needed a car to get to the various job sites.... On February 7, 2004, he went with Horton to purchase a car. Two weeks later, the car had mechanical problems. Horton told him that she had a friend named McGhee who works on cars. On February 26, 2004, he awoke and saw that his car was gone. He paged Horton, who told him that she was going to get his car fixed. He asked her to pick him up so that he could go to work to get his paycheck. He, Cynthia, his cousin Kevin Wiley, ... Horton and her cousin Deek drove to the [ ] oil change shop on Southfield and Plymouth. Horton identified McGhee's nearby house and [announced] that she was going there. [Petitioner] went to the store to purchase lottery tickets. When he returned, he saw Deek pushing a truck in the service drive, [and] Horton and his cousin Kevin driving away in his car. [Petitioner] and Cynthia walked toward McGhee's house, where he saw his other cousin Kevin running from [the property] with a gun in his hand and a mask over his face. He thought that his cousin had been involved in a drug transaction which had gone awry. He took the gun from Kevin, who ran away. When plain clothes officers in an unmarked car arrived, he thought they were the drug dealers and that they were after him so he ran. When uniformed officers in marked cars joined the chase, he became scared and ran. He surrendered after discarding the gun.

4

*Bailey v. Smith,* 492 F. App'x 619, 621-22 (6th Cir. 2012) (quoting the magistrate judge's Report and Recommendation, 5-8) (quoting Def.-Appellant's Br. in *People v. Bailey*, No. 258705 (Mich. Ct. App.) at 1-5).

Petitioner was convicted as charged. The trial court then sentenced Petitioner to prison for thirty-five years, seven months, to sixty years for the robberies, thirteen to twenty years for the home invasion, three years, four months, to five years for being a felon in possession of a firearm, and two years for possessing a firearm during the commission of a felony. Petitioner appealed as of right, but the Michigan Court of Appeals affirmed his convictions. *See People v.* Bailey, No. 258705, 2006 WL 954189 (Mich. Ct. App. Apr. 13, 2006). On August 29, 2006, the Michigan Supreme Court denied leave to appeal. *See People v. Bailey*, 476 Mich. 866; 720 N.W.2d 308 (2006).

On September 19, 2006, Petitioner filed his *pro se* habeas corpus petition under 28 U.S.C. § 2254. He argued, among other things, that the prosecution violated his right to due process by destroying exculpatory evidence. The disputed evidence was the wallet that supposedly belonged to Nixon and was found in the squad car used to transport Petitioner to the police station.

The Court referred the case to a magistrate judge, who recommended that the Court deny the petition. (ECF No. 21). Regarding the destroyed wallet, the

magistrate judge stated that the wallet was not exculpatory evidence and that Petitioner had failed to show that the police destroyed the wallet in bad faith.

The Court adopted the magistrate judge's report and recommendation as its findings and conclusions of law and dismissed the petition.  (ECF No. 25).  The Court also denied a certificate of appealability.  (ECF Nos. 31, 35).  Petitioner appealed the Court's decision, but on July 24, 2012, the United States Court of Appeals for the Sixth Circuit affirmed this Court's decision and denied the writ. *See Bailey*, 492 F. App'x at 619.  The United States Supreme Court denied Petitioner's application for a writ of certiorari.  *See Bailey v. Smith*, 568 U.S. 1001 (2012).

In 2014, Petitioner sought authorization from the Sixth Circuit Court of Appeals to file a second or successive petition.  The Court of Appeals denied his application.  *See In re Jerry Dowell Bailey, Jr.,* No. 14-2552 (6th Cir. June 25, 2015).

In 2017, Petitioner received some information from the Detroit Police Department in response to a freedom-of-information request about evidence in his criminal case.  He then filed a motion for relief from judgment in the state trial court, claiming that the prosecution had concealed exculpatory evidence about the destroyed wallet.  On September 14, 2017, the trial court denied Petitioner's motion because it lacked merit and because the issue had been raised and decided

6

against Petitioner on appeal.  *See People v.* Bailey, No. 04-002932-01-FC (Wayne Cty. Cir. Ct. Sept. 14, 2017).

Petitioner filed a complaint for superintending control in the Michigan Court of Appeals, but the Court of Appeals denied his complaint.  *See In re Bailey*, No. 343615 (Mich. Ct. App. Oct. 3, 2018).  The Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal.   *See Bailey v. Wayne Circuit Judge*, No. 158619 (Mich. Sup. Ct. Apr. 2, 2019).

Petitioner filed his pending motions in this case on August 2, 2019.  The motions were treated as a new habeas corpus case and randomly assigned to United States District Judge George Caram Steeh.  *See Bailey v. LeSatz*, No. 19-12287 (E.D. Mich. Aug. 2, 2019).  Judge Steeh correctly determined that the motions were seeking relief from judgment in this case.  He dismissed Petitioner's new case without prejudice and directed the Clerk of Court to re-file Petitioner's motions in this case for further consideration.  *Id.*  The Court now proceeds to address Petitioner's motions.

## II.  DISCUSSION

Petitioner brings his motion for relief from judgment and to set aside the judgment under Rules 60(b)(2) and 60(d)(3) of the Federal Rules of Civil Procedure.

The basis for Petitioner's motion is the Detroit Police Department's response to a freedom-of-information request that he or a relative made regarding the destroyed wallet, which supposedly belonged to Nixon.  The police department's response reads in relevant part as follows:

> Your request [for information about the destroyed evidence on tag # E 00547004] is denied pursuant to MCL 15.235(5)(b), for the reason that based on information provided by Detroit Police Department (DPD) personnel, it is our understanding that the Detroit Police Department does not possess any record that corresponds to the description in your request.
>
> DPD personnel did indicate that the "property was destroyed because the OIC released the hold (which indicates no need to hold on to property) and also it was not processed or considered evidence.  It was classified as found property; and with no identification accompanied with the wallet/s, it was destroyed."

Mot. for Relief from J., Ex.  E, ECF No. 42, PageID 882.

According to Petitioner, this new information -- that the wallet was not considered evidence, that it was classified as found property, and that it was not accompanied by identification -- shows that the initial police report about the wallet found in the patrol car was false.  Citing *Brady v. Maryland*, 373 U.S. 83 (1963), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), Petitioner also alleges that the new information shows the prosecution and police concealed exculpatory evidence and defrauded courts into believing that they destroyed a wallet, identification, and credit cards belonging to Mr. Nixon.

Petitioner contends that the newly discovered information is exculpatory evidence because he could have used it to impeach the testimony of Officer Tracey Hamilton. Officer Hamilton wrote the initial police report about the recovered evidence and testified at Petitioner's trial that Nixon's wallet was found in the patrol car used to transport Petitioner to the police department. See Mot. for Relief from J., Exs. A and B (ECF No. 42, Page ID. 866-75). Petitioner alleges that the newly discovered information also could have been used to show that Sergeant Samuel Dunigan released the hold on the wallet so that the evidence could be destroyed and prevent Petitioner from proving his innocence.

Petitioner raised his *Brady/Youngblood* claim in his habeas petition. The Court rejected the claim on the basis of the magistrate judge's report and recommendation. According to the magistrate judge, there was no indication in the record that the destroyed wallet was exculpatory evidence or that the police destroyed the wallet in bad faith. The magistrate judge concluded that, at most, the evidence showed that the police were grossly negligent in destroying the wallet and that gross negligence was insufficient to constitute bad faith.

### A. The Request for Relief from Judgment under Rule 60(b)(2)

Federal Rule of Civil Procedure "60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence."

*Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).   Rule 60(b)(2), the particular provision on which Petitioner seeks relief from judgment, states that a court may relieve a party from a final judgment for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

Petitioner's request to present newly discovered evidence under Rule 60(b)(2) in support of a *Brady/Youngblood* claim that the Court previously denied is a "claim."  *See Gonzalez*, 545 U.S. at 530-31.  A Rule 60(b) motion that asserts a claim is, in substance, a second or successive habeas petition, and must be treated accordingly.  *Id.* at 531-33; *Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005).  This means that Petitioner may not bring his claim of newly discovered evidence without prior approval from the appropriate court of appeals.  *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").  The Court denies Petitioner's request for relief from judgment without prejudice because he has not sought an appellate order authorizing this Court to consider his Rule 60(b) claim.

Petitioner's request under Rule 60(b)(2) is denied for an additional reason: it is untimely.  A Rule 60(b) motion "must be made within a reasonable time – and

for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."   Fed. R. Civ. P. 60(c)(1).   Rule 60(b)(2) requires the movant to exercise "due diligence" in discovering new evidence. *Sanders v. Sec'y of Health & Human Servs.*, 802 F.2d 459, 1986 WL 17463, at *2 (6th Cir. Aug. 13, 1986) (unpublished).  The movant ordinarily has "one year from the discovery of the new evidence (under . . . Rule 60(b)) to bring it to the district court's attention."  *Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2016).

The Court entered its judgment in this case on June 30, 2008, and Petitioner allegedly acquire–d the new information on April 18, 2017.  *See* Mot. for Relief from J., Ex. J (ECF No. 42, PageID. 940).  Petitioner filed his Rule 60 motion on August 2, 2019.  The motion was filed more than eleven years after the Court's judgment – even though Petitioner could have discovered the new information sooner if he had exercised due diligence – and more than two years after Petitioner acquired the new information.  As such, Petitioner's argument under Rule 60(b)(2) is untimely.

### B.  The Request to Set Aside the Judgment under Rule 60(d)(3)

Unlike motions brought under Rule 60(b), an action under Rule 60(d) has no time limitation. *Mitchell v. Rees*, 651 F.3d 593, 594 (6th Cir. 2011).  A Rule 60(d) motion permits a court "to entertain an independent action to relieve a party from a judgment" and to "set aside a judgment for fraud on the court."  Fed. R. Civ. P.

60(d)(1) and (3).  But independent equitable actions are "available only to prevent a grave miscarriage of justice," *United States v. Beggerly*, 524 U.S. 38, 47 (1998), and "a 'grave miscarriage of justice' is a 'stringent' and 'demanding' standard." *Mitchell*, 651 F.3d at 595.  To prevent a grave miscarriage of justice in a federal habeas corpus case, a petitioner must make a strong showing of actual innocence. *Id*. at 595-96._____

Petitioner contends that Officer Hamilton and Sergeant Dunigan misled the courts by maintaining that:  they found Marcus Nixon's wallet in the back seat of the patrol car used to transport Petitioner to the police station after his arrest; they placed the wallet in evidence under tag #00547004; and they destroyed the wallet and its contents.   According to Petitioner, the officers' conduct was a fraud on the courts because the police department's newly released information indicates that there were no credit cards, identification, or miscellaneous papers belonging to Mr. Nixon in the wallet.

Fraud on the court is

conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court. *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993).   [A habeas petitioner] has the burden of proving the existence of fraud on the court by clear and convincing evidence. *Info–Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448, 454 (6th Cir. 2008).

*Carter v. Anderson*, 585 F.3d 1007, 1011–12 (6th Cir. 2009).

Petitioner's argument under Rule 60(d)(3) fails for a few reasons.  First, "there is no authority for the proposition that police officers are the equivalent of officers of the court for fraud on the court purposes."  *Canales v. Larsen*, No. CIV 99-1259 JC/RLP, 2000 WL 36739971, at *3 (D.N.M. Apr. 10, 2000) (unpublished decision citing *Greiner v. City of Champlin*, 152 F.3d 787 (8th Cir. 1998), and *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988)), *aff'd*, 3 F. App'x 940 (10th Cir. 2001).  Instead, police officers are like any other defendant or witness.  *See id*. Absent any showing that Officer Hamilton and Sergeant Dunigan were officers of the court, Petitioner has failed to state a claim for fraud on the court.  *Id.*

Second, even if Hamilton and Dunigan were officers of the court and perjured themselves at Petitioner's trial, the fraud would have been perpetrated against the state court.  To prevail on his claim, Petitioner "must show by clear and convincing evidence that a fraud was perpetrated on the federal court, not just the state court."  *Thompkins v. Berghuis*, 509 F. App'x 517, 519 (6th Cir. 2013).  In other words, "for a claim of fraud on the court to succeed, the fraud must have been committed by an officer of the federal habeas trial or appellate courts."  *Buell v. Anderson*, 48 F. App'x 491, 499 (6th Cir. 2002) (citing *Workman v. Bell*, 227 F.3d 331, 336, 341 (6th Cir. 2000) (*en banc*)).

Because Officer Hamilton and Sergeant Dunigan testified only in state court and did not interact with this Court, they did not commit a fraud on this Court.  In addition, a witness's alleged perjury does not suffice to constitute a fraud on the court.  *Preferred Properties, Inc. v. Indian River Estates, Inc.,* 214 F. App'x 538, 540 (6th Cir. 2007) (citing *H.K. Porter Co.* v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118 (6th Cir. 1976)).

Finally, given Petitioner's alleged confession and two victims' identification of him as one of the perpetrators of the crimes, Petitioner has failed to make a strong showing of actual innocence.

### C.  Certificates of Appealability in Rule 60 Motions

A certificate of appealability is necessary to appeal the denial of a motion brought under Rule 60(b), *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010) (citing *United States v. Hardin,* 481 F.3d 924, 926 (6th Cir. 2007)), and under Rule 60(d), *see Thompkins*, 509 F. Appx. at 519.  To obtain a certificate of appealability, Petitioner must show that reasonable jurists "could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' "  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Petitioner has not made the required showing.

### III.  CONCLUSION AND ORDER

Petitioner's argument under Rule 60(b)(2) is an unauthorized second or successive habeas petition.  It is also untimely because it was not brought within a year of the Court's judgment or the acquisition of the new information.

Petitioner's argument under Rule60(d)(3) fails because Petitioner has not shown that an officer of the court committed a fraud on this Court.  Petitioner also has not demonstrated that he is actually innocent and that a grave miscarriage of justice will occur unless the Court sets aside its judgment.

The Court, therefore, denies Petitioner's Rule 60 motion (ECF No. 42).  The Court denies Petitioner's motion for an evidentiary hearing (ECF No. 43) because an evidentiary hearing is unnecessary to resolve Petitioner's underlying claim about the newly discovered information.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims. Reasonable jurists also could not conclude that Petitioner's claims deserve encouragement to proceed further.

**IT IS SO ORDERED**.

Dated: May 18, 2019            s/Denise Page Hood
                               Chief Judge, United States District